UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X
                                                    :
PASQUALE A. LA PIETRA, Individually and On          :
Behalf of All Others Similarly Situated,            :
                                                    :
               Plaintiff,               :        No. 09-cv-7439 (JGK)
                                                    :
    vs.                                           :
                                                    :        ECF Case
RREEF AMERICA, L.L.C., DEUTSCHE                     :
INVESTMENT MANAGEMENT AMERICAS,                     :
INC., MICHAEL G. CLARK and PAUL H.                  :
SCHUBERT,                                           :
                                                    :
               Defendants.              :
                                                    :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X

## DEFENDANTS' REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF THEIR MOTION TO DISMISS THE AMENDED COMPLAINT

SIDLEY AUSTIN LLP
787 Seventh Avenue
New York, New York  10019
(212) 839-5300

*Attorneys for Defendants*

**TABLE OF CONTENTS**

**TABLE OF CONTENTS**

Page(s)

TABLE OF AUTHORITIES .................................................................................................... ii

PRELIMINARY STATEMENT ................................................................................................1

ARGUMENT.................................................................................................................................2

I.    DEFENDANTS OWED NO DUTY TO REPEAT PRIOR DISCLOSURES ....................2

    A.  Plaintiffs Do Not Allege Any Basis for Imposition of a Duty to Update ......................2

    B.  There is No Duty to Repeat Prior Disclosures ...............................................................4

    C.  Plaintiffs Misconstrue Section 11 of the 1933 Act .........................................................7

II.    PLAINTIFFS HAVE NOT PLED A MISSTATEMENT OR SCIENTER ........................8

    A.  Plaintiffs Have Identified No Actionable Misstatement or Omission ..........................8

    B.  Plaintiffs' Contentions Regarding the ARPS Auctions Are Unavailing........................9

    C.  Plaintiffs' Argument Regarding Scienter is Meritless ...................................................9

CONCLUSION............................................................................................................................10

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

Brown v. E.F. Hutton Group, Inc.,
  991 F.2d 1020 (2d Cir. 1993)..................................................................................................8

Coleman & Co. Sec., Inc. v. Giaquinto Family Trust,
  236 F. Supp. 2d 288 (S.D.N.Y. 2002)......................................................................................6

DeMaria v. Andersen,
  318 F.3d 170 (2d Cir. 2003)....................................................................................................7

Edison Fund v. Cogent Inv. Strategies Fund, Ltd.,
  551 F. Supp. 2d 210 (S.D.N.Y. 2008).................................................................................. 2-3

Frigitemp Corp. v. Fin. Dynamics Fund,
  524 F.2d 275 (2d Cir. 1975)....................................................................................................5

Garber v. Legg Mason, Inc.,
  347 Fed. Appx. 665 (2d Cir. 2009).......................................................................................5, 6

Hammerstone NV, Inc. v. Hoffman,
  No. 09 CV 2685, 2010 WL 882887 (S.D.N.Y. Mar. 10, 2010)............................................2, 3

Heller v. Goldin Restructuring Fund, L.P.,
  590 F. Supp. 2d 603 (S.D.N.Y. 2008)...................................................................................10

In re IBM Sec. Litig.,
  163 F.3d 102, 110 (2d Cir. 1998)............................................................................................3

In re Keyspan Corp. Sec. Litig.,
  383 F. Supp. 2d 358 (E.D.N.Y. 2003) .................................................................................4, 6

In re Merrill Lynch & Co., Inc. Research Reports Sec. Litig.,
  272 F. Supp. 2d 243 (S.D.N.Y. 2003).....................................................................................5

In re Morgan Stanley Info. Fund Sec. Litig.,
  592 F.3d 347 (2d Cir. 2010......................................................................................................6

In re NovaGold Res. Inc. Sec. Litig.,
  629 F. Supp. 2d 272 (S.D.N.Y. 2009).....................................................................................3

In re Time Warner Sec. Litig.,
  9 F.3d 259 (2d Cir. 1993) .......................................................................................................2

In re WorldCom, Inc.,
    219 F.R.D. 267 (S.D.N.Y. 2003) ...................................................................................7

Pension Comm. of Univ. of Montreal Pension Plan v. Banc of Am. Sec.,
    446 F. Supp. 2d 163 (S.D.N.Y. 2006) ..........................................................................10

Plumbers & Steamfitters Local 773 Pension Fund v. CIBC,
    No. 08 Civ. 8143, 2010 WL 961596 (S.D.N.Y. Mar. 17, 2010) ...................................9

Portannese v. Donna Karan Int'l, Inc.,
    No. 97-cv-2011, 1998 WL 637547 (E.D.N.Y. Aug. 14, 1998) ....................................4

SEC v. Siebel Sys., Inc.,
    384 F. Supp. 2d 694 (S.D.N.Y. 2005) ...........................................................................5

Seibert v. Sperry Rand Corp.,
    586 F.2d 949 (2d Cir. 1978) ..........................................................................................5

Sheppard v. TCW/DW Term Trust 2000,
    938 F. Supp. 171 (S.D.N.Y. 1996) ................................................................................7

United Paperworkers Int'l Union v. Int'l Paper Co.,
    985 F.2d 1190 (2d Cir. 1993) ........................................................................................5

Wielgos v. Commonwealth Edison Co.,
    892 F.2d 509 (7th Cir. 1989) .........................................................................................5

Yu v. State Street Corp.,
    No. 08 Civ. 8235, 2010 WL 668645 (S.D.N.Y. Feb. 25, 2010) ...................................8

**STATUTES AND RULES**

15 U.S.C. § 77k(a) ....................................................................................................................7

15 U.S.C. § 80a-29 ....................................................................................................................4

17 C.F.R. § 270.8b-16(b) ..........................................................................................................3

17 C.F.R. § 270.30e-1 ...............................................................................................................4

**OTHER AUTHORITIES**

"Form N-2," www.sec.gov/about/forms/formn-2.pdf ..........................................................3, 4

"Important Info. About EDGAR," www.sec.gov/edgar/aboutedgar.htm ................................6

"Closed-End Funds," www.sec.gov/answers/mfclose.htm .....................................................6

"Info. Available to Investment Co. S'holders," www.sec.gov/answers/mfinfo.htm ...................... 6

"Mutual Fund Prospectus, Tips for Reading One,"
    www.sec.gov/answers/mfprospectustips.htm ............................................................................. 7

**Preliminary Statement**

Defendants' moving papers[1] showed that Plaintiffs have stated no claim because all of the facts and risks inherent in the very focused investment strategy of the two Funds at issue in this case were fully and accurately explained to investors and prospective investors alike in the public disclosures made by the Funds.  In response, recognizing that they cannot dispute or discredit these comprehensive disclosures, plaintiffs attempt to shift gears and argue that the Court should consider in a vacuum *only* the statements made by the Funds *during* the putative class period, and that a failure to repeat at length the prior, continually available explanations of the Funds' strategy and concomitant risks constitutes securities fraud.

Plaintiffs are wrong as a matter of both law and logic.  Purchasers of the Funds' shares are charged with knowledge of the Funds' existing statements regarding how they would invest their capital.  Moreover, the Funds, pursuant to their obligations under the securities laws, regularly reported to current and prospective investors any material changes affecting the Funds and provided the precise holdings *and current amounts of leverage* in each of the Funds.  No more is required.

With respect to scienter, the Court should reject Plaintiffs' straw man argument – that Defendants supposedly argued that *they* (*i.e.*, the Defendants) did not know the risks inherent in the Funds' strategy.  Of course, Defendants understood the risks; that is why those risks were so clearly disclosed.  What Defendants did not and could not know was that the disclosed risks would become reality so suddenly in the fall of 2008.

---

[1] All defined terms are used as in the Defendants' moving brief ("Brief" or "Br.").  Plaintiffs' opposition brief is referred to as the "Opposition" or "Opp."  The terms "Ex." or "Exs." shall refer to exhibits(s) annexed to the initial and reply declarations of Andrew W. Stern submitted in support of Defendants' Motion.

**Argument**

I.  **DEFENDANTS OWED NO DUTY TO REPEAT PRIOR DISCLOSURES**

Plaintiffs concede that, where "an allegation of fraud is based upon nondisclosure, there can be no fraud absent a duty to speak." (Opp. at 18.) Such a duty arises only "when (1) required by SEC rules; (2) when an insider trades on the basis of non-public information; or (3) 'when disclosure is necessary to make prior statements not misleading.'" Hammerstone NV, Inc. v. Hoffman, No. 09 CV 2685 (HB), 2010 WL 882887, at *5 (S.D.N.Y. Mar. 10, 2010) (citations include In re Time Warner Sec. Litig., 9 F.3d 259, 268 (2d Cir. 1993)).

Notwithstanding the limited bases for imposition of a duty, Plaintiffs argue that Defendants' omission from its periodic reports to shareholders of the full explanation of risks attending an investment in the Funds – which they concede *were* contained in the only documents used to *offer* shares to the public – constitutes an actionable omission sufficient to plead securities fraud. Because the law does not support a duty to make such repetitive disclosures, the Amended Complaint should be dismissed.

A.  **Plaintiffs Do Not Allege Any Basis for Imposition of a Duty to Update**

Plaintiffs argue that the Funds' disclosures "were stale and had to be *updated* prior to and during the Class Period to reflect changing economic conditions and the Funds' aggressive investment strategies." (Opp. at 18-19 (emphasis added).) They fail, however, to point to *any* prior statements that allegedly had been rendered misleading by subsequent events. Indeed, they appear to acknowledge the appropriateness of the Funds' prior discussions of their strategies and risk factors and only complain that these statements were not *repeated* during the Class Period.

"'A duty to update may exist when a statement, reasonable at the time it was made, becomes misleading because of a subsequent event.'" Edison Fund v. Cogent Inv. Strategies

Fund, Ltd., 551 F. Supp. 2d 210, 224 (S.D.N.Y. 2008) (Koeltl, J.) (quoting In re IBM Sec. Litig., 163 F.3d 102, 110 (2d Cir. 1998)).  Thus, Defendants had a duty to update only upon the occurrence of a "subsequent event" that made a prior disclosure misleading.  Compare In re NovaGold Res. Inc. Sec. Litig., 629 F. Supp. 2d 272, 299-301 (S.D.N.Y. 2009) (duty to update where outdated feasibility study touted instead of new studies providing significantly higher budget estimates) with Hammerstone, 2010 WL 882887, at *5-8 (no duty to update prior disclosures regarding restructuring options absent a subsequent event (e.g., that a single plan was in place) rendering them misleading); see also 17 C.F.R. § 270.8b-16(b) ("material changes" to information in fund's registration statement regarding "investment objectives or polices" or "principal risk factors" must be disclosed in Annual Report).

      Here, Plaintiffs do not allege any "subsequent event" or change in strategy that occurred following the dissemination of the Funds' offering materials that required Defendants to update or change any prior disclosures.  They do not do so because they cannot do so:  the Funds continued to invest precisely in the manner in which they told investors they would invest.  What changed was the market, and the manifestation of the risks previously disclosed.  When this occurred, the Funds properly and promptly disclosed the effects on the Funds.

      Nor do Plaintiffs allege any statutory or regulatory basis for repeating the disclosures previously made.  The Funds are closed-end investment funds governed by both the 1934 Act and the 1940 Act.  As such, the Funds filed registration statements on Form N-2, which required them to, *inter alia*, "[c]oncisely describe the investment objectives and policies of the Registrant that will constitute its principal portfolio emphasis [and] . . . the risks associated with an investment in the Registrant" including "General" risks and the "Effects of Leverage."  Ex. FF at 15-16 ("Form N-2," www.sec.gov/about/forms/formn-2.pdf).

3

Each Fund also files periodic reports on Forms N-CSR (annual and semiannual reports), N-Q (quarterly schedule of portfolio holdings) and N-SAR (semiannual questionnaire) regarding financial statements, investment results and any material changes to prior disclosures. See 15 U.S.C. § 80a-29; 17 C.F.R. § 270.30e-1.  Among other things, annual and semiannual reports must provide tables and charts "in a manner reasonably designed to depict clearly the types of investments made by the Registrant, given its investment objectives." Ex. FF at 39.  All of this information was publicly available; and the semiannual and annual reports, which included a comprehensive list of the Funds' holdings *and precise leverage levels*, were mailed to investors and available to investors and prospective investors alike on the Funds' websites. See, e.g., 17 C.F.R. § 270.30e-1(a); Br. at 4-11, 17-27; Ex. GG (DWS I 2007 Annual Report).[2] Plaintiffs do not allege any failure to comply with these requirements.[3]

### B. There is No Duty to Repeat Prior Disclosures

Perhaps because they cannot point to any omission to make required disclosures, nor any "subsequent event" that compelled Defendants to update or correct the Funds' prior disclosures, Plaintiffs argue instead that the mere *passage of time* nonetheless gave rise to a duty to *repeat* disclosures made earlier.  (Opp. at 13.)  The law, however, does not compel any company to update a disclosure where *nothing has occurred* to make the original statement misleading.

After all, given that the SEC requires that all disclosures "filed with the [SEC] shall be available to the public" on EDGAR, In re Keyspan Corp. Sec. Litig., 383 F. Supp. 2d 358, 373 (E.D.N.Y. 2003) (quoting 17 C.F.R. § 250.104(a)), "[i]t is pointless and costly to compel firms to

---

[2] Plaintiffs argue that "line item" disclosures regarding leverage were "vague" (Opp. at 20) but they do not "challenge the accuracy of any of these disclosures." Portannese v. Donna Karan Int'l, Inc., No. 97-cv-2011, 1998 WL 637547, at *11 (E.D.N.Y. Aug. 14, 1998).
[3] The last potential basis for a duty to disclose, trading by insiders, is not implicated here.

4

reprint information already in the public domain." In re Merrill Lynch & Co., Inc. Research Reports Sec. Litig., 272 F. Supp. 2d 243, 250 (S.D.N.Y. 2003) (parenthetically quoting Wielgos v. Commonwealth Edison Co., 892 F.2d 509, 517 (7th Cir. 1989)).  Thus, Defendants had no obligation to make "new disclosures which reasonably appear to be repetitive." Frigitemp Corp. v. Fin. Dynamics Fund, 524 F.2d 275, 282 (2d Cir. 1975) (affirming dismissal of Section 10(b) claim where plaintiffs had access to documents describing defendants' allegedly omitted purchases); see also Seibert v. Sperry Rand Corp., 586 F.2d 949, 952 (2d Cir. 1978) (no independent obligation to repeat under Section 14 of the 1934 Act); SEC v. Siebel Sys., Inc., 384 F. Supp. 2d 694, 708 (S.D.N.Y. 2005) (same under Regulation FD); Merrill Lynch, 272 F. Supp. 2d at 249-50 (same under 1933 Act)) (citations omitted).

Garber v. Legg Mason, Inc., 347 Fed. Appx. 665 (2d Cir. 2009), is particularly instructive.  In Garber, Plaintiffs complained that the defendant asset management company violated Sections 11 and 12 of the 1933 Act because the registration statement for a secondary stock offering had failed to disclose, *inter alia*, that a significant asset manager would be leaving the company.  The Second Circuit held that, because that information already was in the public domain through news articles and inclusion in prospectuses for certain *other* securities, there was no duty to repeat it in the registration statement for the shares being offered.  Id. at 668-69.  In so holding, the court distinguished and sharply limited the decision in United Paperworkers Int'l Union v. Int'l Paper Co., 985 F.2d 1190 (2d Cir. 1993), upon which Plaintiffs here heavily rely:

> Because the instant case is not about an allegedly misleading proxy statement mailed to shareholders in connection with a shareholder vote, the fact that corporate documents and news reports were not mailed directly to potential investors is not relevant to whether they can be considered part of the total mix of information reasonably available.  Moreover, . . . "it stands to reason that the universe of information a shareholder would consider when voting in a proxy contest concerning a specific issue is smaller than, or at least different from, the corresponding universe an investor would consider when deciding whether to

5

purchase or . . . retain a publicly traded stock in the first instance."

Garber, 347 Fed. Appx. at 669 (quoting Keyspan, 383 F. Supp. 2d at 374 n.6) (dismissing 10b-5 claim, holding that defendants may rely upon disclosures previously filed with the SEC).[4]

Similarly, all of the Funds' SEC filings are available on EDGAR.  See Ex. HH ("Important Info. About EDGAR," www.sec.gov/edgar/aboutedgar.htm).[5]  "An express purpose of the EDGAR system -- which since 1996 has required, absent an exemption, that companies post all SEC filings . . . on the SEC website -- is to ensure that investors have easy access to companies' public filings."  Keyspan, 383 F. Supp. 2d at 373-74 (citation omitted).  Further, "in today's world it is unrealistic to argue that documents available on the SEC website are not readily accessible to the investing public."  Id. at 374.

Indeed, the SEC urges all prospective investors in a closed-end fund to "carefully read all of a fund's available information, *including its prospectus* and most recent shareholder report *before* purchasing" shares.  Ex. II ("Closed-End Funds," www.sec.gov/answers/mfclose.htm); Ex. JJ ("Info. Available to Investment Co. S'holders," www.sec.gov/answers/mfinfo.htm) (same).  Notwithstanding this commonsensical caution, an investor is, of course free to purchase shares without inquiring as to a fund's investment objectives, strategies, and risks.  This choice, however, does not create an independent duty to repeat those statements in every subsequent disclosure.  A contrary conclusion would invite any number of illegitimate lawsuits and place an

---

[4] As Judge Ross noted in Keyspan: United Paperworkers "predates [] the explosion in Internet availability and use generally, and the institution of mandatory filing on EDGAR in particular. Moreover, if read too broadly, the holding that shareholders cannot be charged with knowledge of information in a company's SEC filings would undermine the very rationale for allowing consideration of such filings on a motion to dismiss – namely, that such filings are matters of public record." Id. at 374 n.6.

[5] The Court may take judicial notice of the SEC's website and EDGAR database. See, e.g., In re Morgan Stanley Info. Fund Sec. Litig., 592 F.3d 347, 355 (2d Cir. 2010); Coleman & Co. Sec., Inc. v. Giaquinto Family Trust, 236 F. Supp. 2d 288, 308-09 (S.D.N.Y. 2002).

undue burden on all public companies.[6]

### C. **Plaintiffs Misconstrue Section 11 of the 1933 Act**

Plaintiffs, purporting to rely upon Section 11, argue that "Congress and the SEC have explicitly recognized the fact that disclosures made in registration statements go stale and can only be relied upon for twelve months after its effective date. *See* 15 U.S.C. § 77k(a)." (Opp. at 15.) Plaintiffs, however, misconstrue the statute. The relevant portion of Section 11 provides:

> If such person acquired the security after the issuer has made generally available to its security holders an earning statement covering a period of at least twelve months beginning after the effective date of the registration statement, then *the right of recovery* under this subsection shall be *conditioned on proof that such person acquired the security relying upon such untrue statement* ….

15 U.S.C. § 77k(a) (emphasis added). This provision merely states that a *presumption* of reliance will not be available to certain purchasers of a security more than 12 months after the issuance of that security's registration statement – i.e., such a purchaser would need to prove its *actual* reliance on the misstatement or omission at issue. See, e.g., DeMaria v. Andersen, 318 F.3d 170, 176 (2d Cir. 2003); In re WorldCom, Inc., 219 F.R.D. 267, 288 (S.D.N.Y. 2003).

Nothing in Section 11, or any other of the securities laws, renders stale after a 12 month period the Funds' explanations of their strategies and attendant risks. To the contrary, "[t]he prospectus also acts as an 'owner's manual' *after* you've invested in a fund." Ex. LL ("Mutual Fund Prospectus, Tips for Reading One," www.sec.gov/answers/mfprospectustips.htm) (emphasis added); see also, e.g., Sheppard v. TCW/DW Term Trust 2000, 938 F. Supp. 171, 175 (S.D.N.Y. 1996) (dismissing claims against closed-end trusts' investment adviser and manager

---

[6] Contrary to Plaintiffs' contention that their purchases of Fund shares were made "pursuant to" the Funds' periodic reports to their shareholders (Opp. at 13), each Fund's annual and semiannual report makes clear that it is "sent to the stockholders of [the Funds] for their information. . . .[and is] not a prospectus, circular, or representation intended for use in the purchase or sale of shares of the fund or of any securities mentioned in the report." (See, e.g., Ex. GG at 2.)

7

where "leverage ratio [was] not inconsistent with the plain language of the prospectus – the 'single most important document and perhaps the primary resource an investor should consult'") (quoting Brown v. E.F. Hutton Group, Inc., 991 F.2d 1020, 1030 (2d Cir. 1993)).

## II. PLAINTIFFS HAVE NOT PLED A MISSTATEMENT OR SCIENTER

### A. Plaintiffs Have Identified No Actionable Misstatement or Omission

In opposing the motion to dismiss, Plaintiffs point to three statements of the Funds during the Class Period that they claim were materially misleading. First, they complain about the Funds' statements that they "were investing in the 'highest-quality assets and real estate markets' that they believed were 'fundamentally strong.'" (Opp. at 10, 20 n.10.) Notably, the only allegation offered to support a conclusion that these statements were false is the fact that the Funds' holdings subsequently declined in value when the real estate market collapsed. This is plainly insufficient. See Yu v. State Street Corp., No. 08 Civ. 8235 (RJH), 2010 WL 668645, at *5 (S.D.N.Y. Feb. 25, 2010) ("[t]hough the "phrase 'high-quality' is somewhat vague when read in isolation, it surely cannot be understood as a guarantee that investors would not suffer losses"). Second, Plaintiffs complain that the Funds stated that their ARPS were "triple-A rated," even after the ARPS auctions failed. (Opp. at 10.) Again, Plaintiffs do not, because they cannot, allege that this statement was false.[7]

Third, Plaintiffs argue that statements in the Funds' 2007 Semi-Annual Reports that "leveraging activities had no material effect on [the Funds'] performance" somehow misled them as to the risk of leverage. (Opp. at 10.) In context, however, it is plain that these statements

---

[7] Moreover, neither Plaintiffs nor the Class they seek to represent purchased the ARPS. Indeed, Plaintiffs point this out in arguing that they should not be charged with knowledge of the information in the Funds' publicly available ARPS Prospectuses. (Opp. at 14.) In any event, the Funds' leveraged investment strategy and attendant risks to the common stockholders were fully explained in the Stock Prospectuses (Br. at 4-8, 17-27), and Plaintiffs do not allege otherwise.

were *backward looking* and in a "Q&A," responding to "What contributed to and detracted from performance over the period [from January 1 through June 30, 2007]?" (Ex. KK at 5, 7.) Once again, Plaintiffs do not allege that this factual statement was false, nor do they explain how it could undercut the Funds' clear explanations of the risks relating to leverage.[8]

### B. Plaintiffs' Contentions Regarding the ARPS Auctions Are Unavailing

Plaintiffs argue that the Funds did not disclose that Deutsche Bank entities "were in complete control of the Funds" and "manipulating" ARPS auctions, and "that once defendants' affiliates stopped doing so, the auctions would fail, damaging the Funds and their investors." (Opp. at 5, 11, 18, 20.) The Funds disclosed both the inter-relationships of the various parties and the role played by a Deutsche Bank affiliate in the auctions. (Ex. GG at 5; Br. at 4, 7 n.8, 20 n. 14.) Even if the Court were to credit Plaintiffs' unsupported (and erroneous) argument regarding auction manipulation by Deutsche Bank, it is irrelevant. Following the first failed ARPS auction, the Funds reminded investors that such failures "may increase the cost of leverage for their fund" and that prolonged costs "could negatively impact the fund's return and dividend payments." (Ex. O.) The February 2008 auction failures had no other impact on the Funds' common stockholders, and Plaintiffs do not allege otherwise. (Br. at 9, 20 n. 14.)[9]

### C. Plaintiffs' Argument Regarding Scienter is Meritless

Contrary to Plaintiffs' mischaracterization, Defendants do not contend "that they were

---

[8] Of course, when the Funds' leverage did impact performance, the Funds explained that as well. See, e.g., Exs. GG at 7; MM at 7 ("During the year [i.e., 2007], the fund's leveraged capital structure detracted from its performance as compared with the benchmark.").

[9] Plaintiffs' complaint that the Funds did not disclose in advance that they would not use alternative financing to replace ARPS but, rather, in light of worsening market conditions, would de-leverage the Funds by redeeming ARPS (Opp. at 7) is classic fraud-by-hindsight and is not actionable. See Br. at 25; Plumbers & Steamfitters Local 773 Pension Fund v. CIBC, No. 08 Civ. 8143 (WHP), 2010 WL 961596, at *12 (S.D.N.Y. Mar. 17, 2010) ("'after-the-fact allegations that statements in one report should have been made in earlier reports do not make out a claim of securities fraud'") (citations omitted).

unaware or could not have known the true facts about the Funds' core leveraging strategy." (Opp. at 25.) As discussed in detail, Defendants were aware of, and disclosed, those risks. Plaintiffs ignore the controlling law demonstrating the insufficiency of their allegations regarding a motive to commit securities fraud, and fail to plead conscious misbehavior or recklessness because they allege no facts supporting a conclusion that Defendants had knowledge of or access to information *contradicting* the Funds' disclosures. (Br. at 31.)[10] Moreover, Defendants do not seek to "shield themselves with the global economic crisis" (Opp. at 27), but present it only as a plausible, and more compelling, opposing inference drawn from the Amended Complaint. (Br. at 31.)

## CONCLUSION

For all of the foregoing reasons, and those set forth in Defendants' moving brief, the Amended Complaint should be dismissed with prejudice.[11]

Dated: New York, New York  
March 25, 2010

Respectfully submitted,

SIDLEY AUSTIN LLP

By: _____  
A. Robert Pietrzak (rpietrzak@sidley.com)  
Andrew W. Stern (astern@sidley.com)  
Alex J. Kaplan (ajkaplan@sidley.com)  
787 Seventh Avenue  
New York, New York 10019  
(212) 839-5300

*Attorneys for Defendants*

---

[10] Plaintiffs' scienter case law is inapposite. E.g., Heller v. Goldin Restructuring Fund, L.P., 590 F. Supp. 2d 603, 621 (S.D.N.Y. 2008) (defendants had "unique incentive" as "managers of a struggling, *privately-owned* investment fund in which they possessed a *personal* financial stake") (emphasis added); Pension Comm. of Univ. of Montreal Pension Plan v. Banc of Am. Sec., 446 F. Supp. 2d 163, 173, 187 (S.D.N.Y. 2006) (defendants allegedly inflated Funds' NAV).

[11] Plaintiffs were permitted to amend their complaint again upon receipt of Defendants' motion (Dkt. No. 19), but opted not to do so. Thus, no further leave to amend should be granted.